J-A27019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| SHARON COLEMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HANY MAHMOUD | : | No. 917 EDA 2019 |

Appeal from the Order Entered February 26, 2019
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2016-22259

BEFORE: BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.: **FILED FEBRUARY 18, 2020**

Sharon Coleman ("Appellant") challenges the trial court orders entered on September 18, 2018 (order granting Hany Mahmoud's ("Appellee") motion for sanctions and preclusion), September 20, 2018 (amended order granting Appellee's motion for sanctions), and February 7, 2019 (order granting Appellee's motion for nonsuit and entering judgment for Appellee). These orders became appealable on February 26, 2019, when the trial court entered an order denying Appellant's post-trial motion to strike the judgment of non-suit. *See Murphy v. International Druidic Society*, 152 A.3d 286, 289 (Pa. Super. 2016) (the entry of compulsory nonsuit is not immediately appealable; "rather the appeal lies from the trial court's denial of the motion to remove the non-suit."). After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court recounted the procedural history, as follows:

> In this case, on September 8, 2016[, Appellant] filed a complaint alleging [Appellee] was negligent while driving and caused a car accident that seriously injured [Appellant]. *See* Docket Entry 0. [Appellee] filed an Answer and New Matter on December 9, 2016, and [Appellant] filed her Reply to New Matter on December 13, 2016. *See* Docket Entry 6; 8. A Motion to Compel was filed on January 31, 2018[,] which was subsequently granted although [Appellant] had complied with the request prior to the [c]ourt Order thus rendering the issue moot. *See* Docket Entry 10; 14. A Case Management Conference was scheduled, and the [c]ourt entered an Order directing discovery to be complete by July 13, 2018, and warned counsel that "[f]urther discovery shall not be permitted without leave of [c]ourt and except upon showing of extraordinary circumstances. The failure to strictly comply with the provisions of this Order may result in the imposition of sanctions including, but not limited to[,] an Order of Preclusion or Non-Pros." *See* Order J. Rogers 5/18/18. On July 27, 2018, [Appellee] filed a Motion for Sanctions. *See* Docket Entry 20. Thereafter, the [c]ourt held a hearing on the motion, and then ordered the parties to submit briefs on the matter. On September 18, 2018, Senior Judge Bertin granted the Motion for Sanctions and precluded [Appellant] from testifying or presenting any evidence as a sanction for her discovery violations. *See* Order SJ Bertin 9/18/[18], amended 9/20/18. On October 2, 2018, [Appellant] filed a Motion for Reconsideration and an Application for Amendment of the interlocutory order certifying the orders for appeal to the Superior Court.[1] In response, the [c]ourt vacated its Order pending reconsideration. *See* Order SJ Bertin 10/5/18. Then, on October 26, 2018, the [c]ourt denied reconsideration, and reinstated the sanction Order. *See* Order SJ Bertin 10/26/18. This case was scheduled for a bench trial, and as a result of the preclusion order, [Appellant] failed to present evidence which could prove [her] case, and this [c]ourt granted [Appellee's] oral Motion for Non-Suit. *See* Order J. Page 2/7/19. Subsequently, Post-Trial Motions seeking to Strike the Non-Suit were filed, and denied. *See* Docket Entry 56; 58.

---

[1] The trial court did not rule on the motion requesting interlocutory review in this Court.

On March 4, 2019, [Appellant] filed a timely Notice of Appeal.

Trial Court Opinion, 4/17/19, at 1–2.

Appellant raises the following issues for appellate review:

1. Whether the trial court abused its discretion and otherwise committed an error of law when it granted [Appellee's] Motion for Sanctions and precluded [Appellant] from testifying at trial or arbitration?

2. Whether the trial court abused its discretion and otherwise committed an error of law when it granted [Appellee's] Motion for Sanctions and precluded [Appellant] from offering any evidence, written or testimonial, from any and all lay and expert witnesses?

3. Whether the trial court abused its discretion and otherwise committed an error of law when it granted [Appellee's] Motion for Sanctions when [Appellant] had produced Answers to Interrogatories and Request for Production of Documents 23 days after [Appellant] had been served?

4. Whether the trial court abused its discretion and otherwise committed an error of law when it granted [Appellee's] Motion for Sanctions when [Appellant] reproduced Answers to Interrogatories and Request for Production of Documents in response to a pending Motion to Compel?

5. Whether the trial court abused its discretion and otherwise committed an error of law when it granted [Appellee's] Motion for Sanctions when [Appellant] made multiple good faith efforts to schedule her deposition?

6. Whether the trial court abused its discretion and otherwise committed an error of law when it granted [Appellee's] Motion for Sanctions when [Appellant] made multiple good faith efforts to schedule an independent medical examination with [Appellee's] doctor?

7. Whether the trial court abused its discretion and otherwise committed an error of law when it granted in [Appellee's] Motion for Sanctions, which was a harsh and draconian sanction as per Rohm & Haas Co. v. Lin, 992 A.2d 132, 147 (Pa. Super. Ct. 2010)

and <u>Croydon Plastics Co. v. Lower Bucks Cooling and Heating</u>, 698 A.2d 625, 629 (Pa. Super. 1997)?

8. Whether the trial court abused its discretion and otherwise committed an error of law when it granted [Appellee's] Motion for Sanctions, when there were lesser sanctions, besides preclusion, that the court could have levied against [Appellant] in this case if the trial [c]ourt found [Appellant] in violation of her discovery obligations, which [Appellant] denies?

9. Whether the trial court abused its discretion and otherwise committed an error of law when it granted [Appellee's] Motion for Sanctions, which was filed without merit, as [Appellant] had participated in the discovery process?

10. Whether the trial court abused its discretion and otherwise committed an error of law when it denied [Appellant's] Motion for Reconsideration of the September 18, 2018 and September 20, 2018 orders and memoranda?

11. Whether the trial court abused its discretion and otherwise committed an error of law when it reinstated the September 18, 2018 and September 20, 2018 orders and memoranda?

12. Whether the trial court abused its discretion and otherwise committed an error of law when it improperly granted [Appellee's] Motion for Non-Suit and entering judgment in favor of [Appellee] at trial?

13. Whether the trial court abused its discretion and otherwise committed an error of law when it improperly denied [Appellant's] Post-Trial Motion to Strike the Judgment of Non-Suit?

Appellant's Brief at 35–38.

Appellant's first eleven issues generally assail The Honorable Emanuel Bertin's September 18, 2018 order granting Appellee's motion for sanctions and precluding Appellant from testifying at trial and from introducing any

written or testimonial evidence from any witnesses.[2]  Appellant urges that the

imposition of the preclusive sanction was overly harsh because she

---

[2] Judge Bertin offered the following rationale in support of the preclusion sanction:

> [Appellee] has been prejudiced by [Appellant's] refusal to comply with the [Case Management Order ("CMO")] deadlines. Damages and causation are disputed issues in this matter. [Appellant] is subject to limited tort threshold.  She admitted in discovery answers that her claims are for an aggravation of pre-existing conditions from a prior accident(s) and has filed suit against SEPTA for these same injuries.  [Appellee] was deprived of the opportunity to depose [Appellant] to investigate her full history, the identity of all prior caregivers, prior accidents, subsequent accidents and other essential facts relevant to damages and/or causation.  [Appellee] cannot build a proper defense due to [Appellant's] failure to comply with the CMO.  Any argument that [Appellant] answered interrogatories and gave over medical records which contained names of other physicians and this should be sufficient ignores the fact that a party has an inherent right, barring a protective order, to depose the opposing party.  Often times facts, regarding post-accident hobbies and activities are not disclosed in discovery answers or to caregivers. Moreover the identification of caregivers that were not forthcoming in answers to written discovery are only learned of through a plaintiff's deposition.  Without this information [Appellee] has been prejudiced from developing defenses to the issues of damages and causation.  Even if [Appellee] were to be allowed to take [Appellant's] deposition he would still require several months of additional time in order to effectuate and receive subpoena responses for pre-accident caregivers identified at the deposition.

> Lastly, [Appellee] makes a compelling concluding argument in his brief that, in this court's view, demands, in the interests of justice, entry of a preclusion order:

> [Appellant] was given ample warning of the penalties she might face if she failed to comply with the CMO.  She was also told that her only remedy to avoid said penalties would be to file a

substantially complied with Appellant's discovery requests, she acted in good faith, and any prejudice suffered by Appellee was easily curable.

The trial court "may, on motion, make an appropriate order" for sanctions for discovery violations." Pa.R.C.P. 4019. We will not reverse a trial court's order imposing a discovery sanction unless the trial court abused its discretion. *Farrell v. Farrell*, 218 A.3d 485, 490 (Pa. Super. 2019) (citing *Rohm & Haas Co. v. Lin*, 992 A.2d 132, 141–142 (Pa. Super. 2010)). While

---

motion for extraordinary relief and provide a suitable explanation to this [c]ourt as to why she could not comply with the deadlines and required an additional extension. If [Appellant] had taken that route and the [c]ourt denied her motion then [Appellee] would be entitled to sanctions including preclusion. It was her duty, if she wished to preserve her testimony and evidence, to either appear for her deposition and defense medical examination or to file a motion. She did neither.

Memorandum and Order, 9/18/18, at 3–4 (quotation marks omitted).

Judge Bertin amended the September 18, 2018 order to correct a typographical error and to reference Appellant's counsel's response to his inquiry concerning Appellant's failure to file a response to Appellee's motion for sanctions:

[A]t the oral argument . . . the court inquired of [Appellant's] counsel as to why she did not bother to file a responsive pleading/answer to the detailed motion for sanctions, which was a serious motion, in that it requested a preclusion order. [Appellant's] response . . . was not satisfactory to this court and demonstrated, again, the lack of seriousness [Appellant] is taking toward her own case and her disregard of requirements of important, timely court filings and deadlines.

Amended Memorandum and Order, 9/20/18, at 1.

- 6 -

the severity of the sanctions imposed is also within the trial court's discretion, such discretion is not unfettered:

> [B]ecause dismissal is the most severe sanction, it should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced. Consequently, where a discovery sanction either terminates the action directly or would result in its termination by operation of law, the court must consider multiple factors balanced against the necessity of the sanction.

*Id*. at 142 (internal quotation and citations omitted).

In *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259 (Pa. 2009), the Pennsylvania Supreme Court adopted this Court's jurisprudence enumerating four factors for trial and appellate courts to consider before concluding dismissal constitutes a proper sanction for a discovery violation:

> (1) the prejudice, if any, endured by the non-offending party and the ability of the opposing party to cure any prejudice; (2) the noncomplying party's willfulness or bad faith in failing to provide the requested discovery materials; (3) the importance of the excluded evidence in light of the failure to provide the discovery; and (4) the number of discovery violations by the offending party.

*Id.* at 1270 (citing *Pioneer Commercial Funding Corp. v. Amer. Financial Mortg. Corp.,* 797 A.2d 269 (Pa. Super. 2002), *rev'd on other grounds*, 855 A.2d 818 (Pa. 2004)). When the discovery sanction either terminates the action directly or would result in its termination by operation of law, the first two factors assume greater significance. *City of Philadelphia*, 985 A.2d at 1271. After the *City of Philadelphia* decision, this Court again identified the

- 7 -

guiding principles for review of a trial court's decision to effectively dismiss an action for discovery violation, as follows: "the nature and severity of the discovery violation, the defaulting party's willfulness or bad faith, prejudice to the opposing party, the ability to cure the prejudice; and the importance of the precluded evidence in light of the failure to comply." **Rohm & Haas**, 992 A.2d at 142 (quoting **Croydon Plastics Company, Inc. v. Lower Bucks Cooling & Heating**, 698 A.2d 625, 629 (Pa. Super. 1997)). The trial court herein carefully analyzed the **Rohm Haas/Croydon** factors in justifying the preclusion determination:

> In this case, [Appellant] had a prior car accident which caused injuries to the same area as alleged in this case, and had resulted in a prior lawsuit. *See* [Appellee's] Response in Opposition to Motion for Reconsideration. [Appellant] canceled her deposition on short notice two times, and then rescheduled her deposition for just three days before the discovery deadline. [Appellant] confirmed her deposition the day before, and then canceled the same deposition three hours later claiming that all counsel were not available. *See id.* The first deposition was canceled after [Appellant] agreed to the date because the parties wished to depose both sides at the same time, and [Appellee] was not available. Then the second deposition was scheduled, and the location was changed to [Appellant's] counsel's office to be more convenient, before being canceled because [Appellant's] firm, Simon & Simon, apparently did not have a single attorney available to depose the parties. Despite having canceled her third deposition days before the time for discovery expired, [Appellant] failed to seek the only relief available, a Motion for Extraordinary Relief. If [Appellant] truly believed [she] had made every effort to meet the deadline, and [was] unable to do so, [she] could have filed a Motion for Extraordinary Relief seeking to extend the time for discovery which would have prevented the imposition of sanctions for failing to comply with the Case Management Order. [Appellant] failed to do so.[1] [Appellant] did not do so even after sanctions were entered in an attempt to have the sanctions reconsidered. [Appellant] sought instead to have [Appellee]

precluded from pursuing a defense due to her refusal to participate in discovery, and refusal to seek appropriate relief.

> [1] "Any extension beyond the maximum time limit for the placement of the case into the Civil Trial Inventory, as noted in subsection (d) above, must be approved by a Judge. Said request shall be in the form of a Motion for Extraordinary Relief, which shall set forth the reason(s) why the requested relief should be granted. The opposing side(s) shall have five (5) days in which to respond to said Motion, after which time the Court will enter an appropriate order." PA R MONTGOMERY CTY RCP Rule 200 (3) (e). Montgomery County adopted Rule 200 to ensure timely discovery and trial. Counsel were aware of the rule, and reminded at the Case Management Conference that the rule would be strictly enforced.

[Appellant] also failed to respond to [Appellee's] request for an IME since at least May of 2018 to allow [Appellee] to prepare an expert report in the case. [Appellant] did not advise that [she] refused to participate in the examination, but merely failed to respond. *See id.*

Here, when considering the factors espoused in *Croydon Plastics Co.,* it is clear that the [c]ourt was well within its discretion to issue the preclusion order. When considering the nature and severity of the discovery violations, they are extreme. The ability to depose [Appellant] and have a Defense expert examine [Appellant] form a large part of the Defense of an auto negligence claim. Without those pieces of discovery, [Appellee] is unable to pursue other avenues of discovery to prepare a defense, is unable to engage in settlement negotiations, and is unable to form a theory of their case. [Appellee] is forced to guess about the nature and cause of [Appellant's] injuries, the alleged extent of damages, [Appellant's] version of events, and a myriad of other facts. The fact that [Appellant] complied with some discovery requests does not excuse [her] other, more significant failures. Further, in this case, [Appellant's] willfulness or bad faith was significant. While not intentional, [Appellant] engaged in a significantly negligent approach to discovery. Requests for an [Independent Medical Exam ("IME")] were completely ignored by [Appellant], and the requests for a deposition were cancelled late, and with little regard for the impending deadlines. Further, when [Appellant's] neglect caused prejudice to [Appellee], [Appellant]

failed to seek relief in the form of a Motion for Extraordinary Relief to extend discovery.

Third, as discussed already, and alleged in the Motion for Sanctions and Memoranda of Senior Judge Bertin, [Appellee] was severely prejudiced. [Appellee] was left without the ability to contest damages without the IME. [Appellee] also was unable to explore whether there were more underlying accidents prior to or subsequent to this accident. [Appellee] was unable to learn the allegations of [Appellant] regarding the events of the accident and the specific ways in which she had been damaged. Fourth, [Appellee] could not cure the prejudice without compliance by [Appellant]. Further, [Appellant] did not seek to remove the prejudice by filing a Motion for Extraordinary Relief. Finally, the importance of the evidence that was excluded in light of the failure to comply, as already discussed, was enormous. [Appellant] failed to engage in meaningful discovery, running out the clock on discovery, and now claims that [she] should be permitted to benefit from [her] failure to engage in good faith discovery or cure [her] default by seeking an extension of the discovery deadline [she] failed to meet. The [c]ourt cannot permit a [p]laintiff to disobey the deadlines set by the [c]ourt, and avoid the clear consequences that are laid out for a failure to comply. For all the factors considered, particularly the prejudice, and the willful failure to correct the deficiencies, the [c]ourt did not abuse its discretion in precluding [Appellant] from presenting evidence or testifying in her case. Finally, this [c]ourt's denial of the Motion for Reconsideration and reinstatement of the sanctions was proper for the same reasons this [c]ourt's original order granting sanctions was proper.

Trial Court Opinion, 4/17/19, at 5–8.

Rather than challenge the trial court's **Rohm Haas/Croydon** analysis, Appellant crafts her appellate argument that the order precluding her from testifying and presenting evidence at trial was an improper sanction by reference to the Pennsylvania Supreme Court's decision in **City of Philadelphia**. Although the phraseology describing the factors to evaluate the propriety of a severe discovery sanction differs somewhat in these cases,

we do not find any significant distinction in the two Courts' teachings on the balancing of the equities required when a discovery sanction effectively terminates the litigation. Thus, we conduct our review of the propriety of the discovery sanction under the precepts established in *Rohm Haas/Croydon*.

*Rohm Haas/Croydon* first requires courts to evaluate the nature and severity of the discovery violations. The trial court weighed this factor against Appellant, finding that her failure to be deposed and submit to an IME thwarted Appellee's ability to prepare a defense, formulate a theory of the case, or engage in settlement negotiations. The trial court also determined that without Appellant's deposition and an IME, Appellee could not ascertain the nature and cause of Appellant's injuries or the extent of damages allegedly suffered.

Appellant responds to the trial court's description of her discovery violations in the section of her brief contending that the sanction imposed was unduly harsh. Appellant's position in this regard can be summarized as follows: 1) the trial court's order granting the motion for sanctions was equivalent to a dismissal of Appellant's claims; 2) Appellant committed only one discovery violation; 3) evaluation of the *Rohm Haas/Croydon* factors suggests that the trial court ruled incorrectly; and, 4) the "punishment did not fit the crime." Appellant's Brief at 55–60.

Appellant's contention that the preclusion order effectively terminated the case is not disputed and requires no further discussion. Appellant's next

claim that she committed one discovery violation is not supported. Notably, Appellant does not identify the admitted discovery violation. Nevertheless, the record demonstrates that Appellant's responses to Appellee's interrogatories and request for documents did not identify fully her medical care providers or details about prior injuries she sustained in another automobile accident or the ensuing lawsuit stemming from that earlier accident. Additionally, Appellant twice cancelled her deposition on very short notice, citing counsel's staffing issues. Appellant further violated the discovery process when she did not heed the CMO's directive that discovery could be extended only by leave of court and in extraordinary circumstances.

Appellant also submits that consideration of the **Rohm Hass/Croydon** factors suggests that the trial court erred in precluding Appellant from testifying or presenting evidence as a sanction for what she describes as her *de minimis* discovery violation. Despite the trial court's thoughtful consideration of those factors in its Pa.R.A.P. 1925(a) opinion, Appellant does not contest the trial court's analysis in any manner. Without a substantive challenge to the trial court's reasoning, this issue is waived. **See Lechowicz v. Moser**, 164 A.3d 1271, 1276 (Pa. Super. 2017) (Superior Court will not consider argument that is not properly developed).

Appellant reiterates her claim that the discovery sanction was draconian by citation to **Estate of Ghaner v. Bibi**, 779 A.2d 585 (Pa. Super. 2001), wherein this Court observed that in "formulating an appropriate sanction

order, the court is required to select a punishment which 'fits the crime.'" *Id*. at 590 (quoting *Hein v. Hein*, 717 A.2d 1053, 1056 (Pa. Super. 1998)). In *Ghaner*, the trial court dismissed a plaintiff's wrongful death lawsuit after she failed to file a pretrial statement in accordance with Pa.R.C.P. 212.2(c). We ruled that dismissal was a harsh and inappropriate sanction because a lone violation of the Pennsylvania Rules of Civil Procedure without something further could not be deemed "willful," "contemptuous," or "dilatory." *Id*. at 589.

This case is distinguishable from *Ghaner*. As detailed above, Appellant did not violate one rule of procedure. Rather, she engaged in a pattern of dilatory conduct designed to circumvent the discovery process, particularly in regard to her repeated failure to appear for a deposition. Appellant was also not cooperative in producing comprehensive and timely information about both her injuries resulting from the accident involving Appellee or those incurred in an earlier accident. Additionally, Appellant did not file a motion for extraordinary relief after the sanctions were entered to attempt to cure the prejudice. These discovery violations were severe enough to warrant dismissal. *See Stewart v. Rossi*, 681 A.2d 214, 219 (Pa. Super. 1996) (upholding trial court's dismissal sanction when discovery violations were in bad faith and significantly prejudiced the defendant's defense).

Appellant next claims that she did not act willfully or in bad faith during the discovery process. Appellant asserts that she complied with the CMO and

produced all the relevant documents requested, including her medical records and expert reports. Appellant further maintains that she agreed to submit to a medical examination with Appellee's physician despite the fact that Appellee failed to seek a court order for the examination as required by Pa.R.C.P. 4010.[3]

Appellant's assertion of her purported willingness to engage in the discovery process is contradicted by her cavalier approach to Appellee's discovery requests. Appellant twice cancelled her deposition on short notice, citing counsel's unavailability. Additionally, although Pa.R.C.P. 208.3 does not require that a response be filed to a motion for sanctions, given the severity of the preclusive relief requested by Appellee, we agree with Judge Bertin that Appellant's non-response to the motion demonstrated "the lack of seriousness

---

[3] Rule 4010 provides, in relevant part:

(2) When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by an examiner or to produce for examination the person in the party's custody or legal control.

* * *

(3) The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

Pa.R.C.P. 4010(2) and (3).

[Appellant] is taking toward her own case and her disregard of requirements of important, timely court filings and deadlines." Amended Memorandum and Order, 9/20/18, at 1. Finally, and significantly, if Appellant believed that her non-compliance with Appellee's discovery requests was excused by legitimate reasons, the remedy to extend the discovery deadline, as dictated by Montgomery County Local Rule 203(e) and the CMO, was to file a motion for extraordinary relief. Appellant did not seek such relief.

Finally, Appellant asserts that "[t]he prejudice, if any, suffered by [Appellee] was minimal and easily cured." Appellant's Brief at 52. Appellant contends that Appellee was equally responsible for the difficulty in scheduling her deposition. She particularly chastises Appellee for waiting until two months before the discovery deadline to request her deposition in light of his representation that once the deposition occurred, Appellee would "require several months of additional time in order to effectuate and receive subpoena responses for pre-accident caregivers identified at the deposition." Appellant's Brief Pursuant to Court's Order of September 6, 2018 (directing that the parties file briefs on Appellee's Motion for Sanctions), 9/14/18, at 6. Appellant then offers that any prejudice could have been alleviated since she offered to be deposed despite the passing of the discovery deadline.

We do not find Appellant's counter to the trial court's finding of prejudice to be compelling. Significantly, Appellant does not dispute the basis for the prejudice ruling—that Appellee's inability to depose Appellant hampered

Appellee's ability to formulate a defense to Appellant's lawsuit. Appellant's position that Appellee bore equal blame for the failure to schedule Appellant's deposition is not responsive to whether Appellee was prejudiced. In any event, it is clear that most of the scheduling issues were occasioned by Appellant's unavailability and her untimely cancellations. Also, Appellant's claim that any prejudice was curable because she offered to be deposed after the court-imposed deadline does not consider that scheduling such a deposition would require defiance of the CMO. Appellant was cautioned that discovery after the stated closing date would not be permitted "without leave of [c]ourt and except upon showing of extraordinary circumstances." Civil Case Management Conference Order, 5/18/18, at unnumbered 1. In the absence of a motion for extraordinary relief, Appellant's proposal for an out-of-time deposition was legally untenable.

Based upon the standard established by *Rohm Haas/Croydon*, we conclude that the trial court correctly determined that Appellant's dismissive behavior throughout the discovery process warranted the severe sanction of dismissal. Accordingly, the trial court did not abuse its discretion in preventing Appellant from introducing evidence at trial as a sanction.

Appellant's final issues allege that the trial court erred when it granted Appellee's motion for nonsuit and further erred by denying her post-trial motion to strike the nonsuit judgment. Appellant succinctly asserts that the two September 2018 orders granting and amending Appellee's Motion for

Sanctions and Preclusion were "the initial tipping points, triggering an extreme domino-like effect for the duration of [Appellant's] case, resulting in a granting of Non-Suit and judgment in favor of [Appellee]." Appellant's Brief at 60.

Nonsuit is properly entered where it is clear that the plaintiff has not established a cause of action or right to relief. *See* Pa.R.C.P. 230.1. ("the court, on oral motion of the defendant, may enter a nonsuit on any and all causes of action if . . . the plaintiff has failed to establish a right to relief."). We will reverse an order denying a motion to remove a nonsuit only if the trial court abused its discretion or made an error of law. *Staiger v. Holohon*, 100 A.3d 622, 624 (Pa. Super. 2014) (quotation omitted).

We can readily resolve the question of the propriety of the trial court's decisions to grant Appellee's motion for nonsuit and to deny Appellant's motion to strike. First, there is no question that Appellant failed to state a claim for relief. Second, Appellant's argument focuses solely on the validity of Judge Bertin's orders granting Appellee's motion for sanctions and preclusion and denying reconsideration. We have concluded that those orders are legally sustainable; accordingly, Appellant is not entitled to relief.

Order affirmed.

Judge Bowes joins this Memorandum.

Judge Strassburger files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/18/20